UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
PATRICIA ESTEFANIA ARIAS MASQUI,

Plaintiff,

-against-

IRON STEEL MAPESA CORP., and OSCAR AGUALONGO and MAURO AGUALONGO, as individuals,

Defendants.
-------------------------------------------------------------------

REPORT AND RECOMMENDATION

No. 24-CV-05365-RER-JRC

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Patricia Estefania Arias Masqui ("plaintiff") brings this wage-and-hour action against defendants Iron Steel Mapesa Corp. ("Mapesa" or "corporate defendant"), and Oscar Agualongo ("Oscar") and Mauro Agualongo ("Mauro") as individuals (Oscar and Mauro collectively referred to as "individual defendants") (corporate and individual defendants referred to collectively as "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") § 190 *et seq.*, and the NYLL's Wage Theft Prevention Act ("WTPA"). *See generally* Compl., Dkt. 1. Upon plaintiff's application and in light of defendants' failure to defend this action, the Clerk of the Court entered defendants' default on December 19, 2024. *See* Dkt. 17. Currently pending before this Court, on a referral from the Honorable Ramon E. Reyes, Jr., is plaintiff's motion for default judgment, seeking unpaid wages, unpaid minimum and overtime wages, liquidated and statutory damages, pre- and post-judgment interest, penalties for unpaid damages, and attorneys' fees and costs. *See* Mot. For Default J., Dkt. 30; Order Referring Mot. dated Nov. 20, 2025; Mem. of Law in Supp. of

Pl.'s Mot. For Default J. ("Pl.'s Mem."), Dkt. 32.[1]

For the reasons described below, this Court respectfully recommends granting, in part, plaintiff's motion for default judgment.

**Factual Background**

The following facts are taken from the Complaint (Dkt. 1) and plaintiff's affidavit (Dkt. 31-11) and are assumed as true for purposes of this report and recommendation.

Corporate defendant Mapesa is a New York domestic business corporation with its principal executive office at 265 Belmont Avenue, Brooklyn, New York 11207. Compl. ¶ 8. Individual defendants Oscar Agualongo and Mauro Agualongo "own and operate" Mapesa and (i) "are responsible for overseeing the daily operations," (ii) "have power and authority over all the final personnel decisions," and (iii) "are responsible for determining, establishing, and paying the wages of all employees . . . including the [p]laintiff." Compl. ¶¶ 10, 12–13, 17. Plaintiff was hired directly by defendants who were "in charge of the day-to-day operations of Mapesa" and "were the individuals responsible for assigning [her] work schedules, hours, and days of work and setting [her] pay and paying [her] wages." Aff. of Patricia Estefania Arias Masqui ("Pl.'s Aff."), Dkt. 31-11 at ¶¶ 3–5.

From November 2023 until January 2024, plaintiff was employed by Mapesa. Compl. ¶ 20; Pl.'s Aff. ¶¶ 3, 18. Plaintiff was hired to work as a machine operator, flagger, laborer, and helper performing other miscellaneous duties. *See* Compl. ¶ 21; Pl.'s Aff. ¶ 3. During her employment, plaintiff regularly worked four to five days per week. Compl. ¶¶ 22–23; Pl.'s Aff. ¶¶ 8–9. Three to four days per week, plaintiff worked from 8:00 a.m. to 6:30 p.m. or later, and one to two days per week plaintiff worked from 8:00 a.m. to approximately 9:00 p.m. or later.

[1] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

*Id.* Plaintiff was required to work approximately 44.5 to 55 hours per week during her time of employment. Compl. ¶ 24; Pl.'s Aff. ¶ 10.

At the time of hiring, defendants informed plaintiff that she would be paid a daily rate of $120. Compl. ¶ 25; Pl.'s Aff. ¶ 11. Plaintiff's sole compensation during her employment by defendants was a one-time cash payment of $500, received after her third week of employment. *See* Compl. ¶¶ 26; Pl.'s Aff. ¶ 11. Plaintiff alleges that she was not paid an overtime premium for hours she worked in excess of 40 per week, was not paid the required minimum wage throughout her employment, was not timely paid for her first two weeks of work, and was not paid for any work for the remainder of her employment (*i.e.,* from late November 2023 until the end of January 2024). Compl. ¶¶ 27–30; Pl.'s Aff. ¶¶ 12–14. Plaintiff did not receive a wage notice or wage statements, and defendants did not implement a system for clocking, tracking, or recording employees' hours worked. Compl. ¶¶ 32–34; Pl.'s Aff ¶¶ 15, 17.

**Procedural Background**

Plaintiff alleges that the defendants failed to pay her overtime wages pursuant to the FLSA and NYLL (First and Second Causes of Action); failed to pay her minimum wages pursuant to the FLSA and NYLL (Third and Fourth Causes of Action); failed to pay her wages for hours worked under the FLSA and NYLL (Fifth and Sixth Causes of Action); failed to pay her wages owed on a weekly basis in which wages were earned under the NYLL (Seventh Cause of Action); failed to provide her with a wage notice at the time of her hiring under the NYLL (Eighth Cause of Action); and failed to provide accurate wage statements under the NYLL (Ninth Cause of Action).

On July 31, 2024, plaintiff commenced this action. *See generally* Compl. All defendants were properly served, with the corporate defendant served on August 14, 2024, and individual defendants served on August 23, 2024. *See* Dkts. 9, 10, 11. Mapesa failed to file its answer by

September 4, 2024; the individual defendants failed to file their answer by September 13, 2024. *Id.* Defendants have failed to answer the Complaint or otherwise appear in this case. The Clerk of the Court entered default against all defendants on December 19, 2024. *See* Clerk's Entry of Default, Dkt. 17. On November 18, 2025, plaintiff filed the at-issue motion for default judgment against all defendants, which Judge Reyes referred to the undersigned. *See* Mot. For Default J., Dkt. 30, Order Referring Mot. dated Nov. 20, 2025.[2]

## Discussion

### I. Default Judgment Standard

Under Rule 55 of the Federal Rules of Civil Procedure, entering a default judgment against a defendant is a two-step process. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) ("Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." (citation omitted)). First, the Clerk of the Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed R. Civ. P. 55(b)(2).

[2] Plaintiff previously filed two motions for default judgment, Dkts. 19, 23, that the Court denied on procedural grounds, Dkt. entries dated Feb. 20, 2025, and Nov. 7, 2025.

Here, on December 19, 2024, the Clerk of the Court noted the default of defendants Iron Steel Mapesa Corp., and Oscar Agualongo and Mauro Agualongo, as individuals. *See* Dkt. 17. Since then, defendants have not appeared or moved to vacate the entry of default.

Whether or not a default judgment is then issued is within the discretion of the court. *See Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) ("The decision to grant a motion for default judgment is left to the sound discretion of the district court."). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation modified); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("Prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (citation modified)).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its

responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, "plaintiff is not entitled to a default judgment as a matter of right" simply because defendants are in default. *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor"). A fact is not considered "well-pleaded," however, "if it is inconsistent with the other allegations of the complaint or with facts of which the court can take judicial notice or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citation modified). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, defendants did not respond to the Complaint despite proper service. Plaintiff filed affidavits of service confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 33, 35. Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now

proceeds to consider whether those facts establish defendants' liability under federal and state law.

## II. Liability

Plaintiff moves for default judgment on her claims under the FLSA and the NYLL. For the reasons set forth below, this Court concludes that plaintiff sufficiently alleges facts giving rise to liability.

### A. Statute of Limitations

As an initial matter, this Court must determine whether plaintiff's claims are timely. The NYLL has a six-year statute of limitations, and the FLSA has a three-year statute of limitations for "willful" violations, which also applies to defaulting defendants. *See* N.Y. Lab. Law §§ 198(3), 663(3); 29 U.S.C. § 255(a); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies.").

Here, plaintiff seeks to recover damages for violations of state and federal employment laws in connection with plaintiff's work for defendants from November 2023 until January 2024. *See* Compl. ¶¶ 1, 20. Because plaintiff filed the present lawsuit within one year of the alleged violations of the FLSA and NYLL, plaintiff's claims are timely under both of the relevant statutes of limitations.

### B. FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019). To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer–employee relationship

existed at the time of the alleged FLSA violations and (2) the employment falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); 29 U.S.C. § 207(a)(1) (providing for overtime wages for qualifying employees).

**1. Employer–Employee Relationship**

"There is 'no rigid rule for the identification of an FLSA employer.'" *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374 (E.D.N.Y. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (citation modified); *see also Baizan Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (quoting *Barfield*, 537 F.3d at 142). Despite these enumerated factors,

however, a district court should consider any factor relevant to its assessment of the economic realities of an alleged employer–employee relationship. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

"In accordance with these principles, a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *10 (E.D.N.Y. Mar. 1, 2022) (citation modified), *report and recommendation adopted*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); *see Herman*, 172 F.3d at 139. Accordingly, "joint employers, including corporate officers with the 'power to control,' may be held jointly and severally liable for FLSA violations." *Espinoza*, 2022 WL 987429, at *10 (citation omitted).

Plaintiff's unopposed allegations are sufficient to conclude that defendants jointly employed plaintiff under the FLSA. First, plaintiff alleges that individual defendants Oscar Agualongo and Mauro Agualongo set wages and compensation of employees, including plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire, fire and discipline employees. *See* Compl. ¶¶ 13–17. Thus, defendants possessed "operational control" over plaintiff and were employers under the FLSA. *See Irizarry*, 722 F.3d at 116 (applying the "economic reality" factors and holding that the individual defendant jointly employed plaintiffs where the individual defendant possessed "functional control over the enterprise as a whole"); *see also Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964, 2020 WL 1364908, at *3–4 (E.D.N.Y. Mar. 6, 2020) (applying the "economic reality" factors and finding that both defendants were jointly and severally liable where they "had authority to hire and fire [plaintiff] and to control his working conditions and compensation"), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares*

*Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Second, and in support of joint and several liability, plaintiff alleges that the individual defendants "own and operate," "are agents of," "are responsible for overseeing the daily operations of," and "have power and authority over all personnel decisions of" Mapesa. *See* Compl. ¶¶ 10–13. "A plaintiff's allegations that the individual defendant[] and corporate defendant are part of a common ownership or management of a business, coupled with defendants' default, are sufficient to allege joint employment following a default." *Castro v. Hyper Structure Corp.*, No. 21-CV-01391, 2022 WL 2467242, at *7 (E.D.N.Y. Mar. 7, 2022), *report and recommendation adopted*, Order dated May 18, 2022. Thus, based on plaintiff's allegations, this Court finds that plaintiff was jointly employed by the individual and corporate defendants.

**2. Plaintiff's Employment was Covered by the FLSA**

Next, this Court must determine whether plaintiff's employment falls under the FLSA's individual or enterprise coverage provisions. The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')." *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (alterations in original) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam). To properly plead enterprise coverage, a plaintiff must demonstrate that her employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently

engaged in commerce or the production of goods for commerce, including "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see* 29 C.F.R. § 779.238.

Plaintiff's allegations are sufficient to conclude that defendants are subject to the FLSA. First, plaintiff claims that the corporate defendant "engaged in interstate commerce within the meaning of the FLSA in that Iron Steel Mapesa Corp. has purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and has had employees engaged in interstate commerce, and/or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material that have been moved in or produced for commerce by any person." Compl. ¶ 19.

Second, plaintiff alleges that the corporate defendant "has had annual gross volume of sales of not less than $500,000.00" and that "defendants employed approximately 16 or more employees within the relevant time period who were subjected to similar payment structures." Compl. ¶¶ 19, 39. Courts in this district have held that conclusory allegations similar to those made here with respect to enterprise coverage are sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate [the business] . . . do not exclusively come from New York State." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Santos v. Cancun & Cancun Corp.*, No. 21-CV-0192, 2022 WL 1003812, at *4 (E.D.N.Y. Feb. 17, 2022); *Wuzi Jiao v. Kitaku Japanese Rest., Inc.*, No. 16-CV-2694, 2020 WL 2527588, at *5–6 (E.D.N.Y. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 2523109 (E.D.N.Y. May 18, 2020). Accordingly, this Court recommends finding that plaintiff's allegations are sufficient to conclude that plaintiff's employment falls under the FLSA's protections.

**C. NYLL**

As with the FLSA, the NYLL broadly defines an "employer." The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-00557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020) (quoting *Ntalianas et al. v. B & A Contracting of Landmark Inc. et al.*, No. 16-CV-5934, 2018 WL 1701960, at *3 (E.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018)).

As stated above, this Court finds that plaintiff was jointly employed by individual defendants Oscar Agualongo and Mauro Agualono, and corporate defendant Mapesa under the FLSA, and, therefore, this Court applies the same standards to recommend finding that plaintiff was jointly employed by the individual defendants and Mapesa under the NYLL. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.").

**D. Unpaid Wages**

Plaintiff alleges that defendants failed to pay her entirely for certain weeks in violation of the FLSA and the NYLL. *See* Compl. ¶ 27; Pl.'s Aff. ¶¶ 14, 19. However, one area in which the NYLL differs from the FLSA is the extent to which employees may recover their unpaid wages. Under the FLSA, a plaintiff may recover for unpaid "straight time" only up to the minimum

wage rate. *See Villar v. Prana Hosp., Inc.*, No. 14-CV-8211, 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017), *report and recommendation adopted*, 2018 WL 3579841 (S.D.N.Y. July 25, 2018). In contrast, under various sections of the NYLL, a plaintiff may recover for unpaid "straight time" at the regular rate where it exceeds the minimum wage. *See Shetty v. SG Blocks, Inc.*, No. 20-CV-00550, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020); *Villar*, 2017 WL 1333582, at *4 (citing cases relying on sections 191 or 198).

Here, plaintiff has asserted that defendants failed to pay her for all of the straight-time hours that she worked after her third week of employment. Thus, plaintiff has sufficiently alleged that she was not paid her earned wages after her first three weeks of employment in accordance with the terms of her employment, as required by the NYLL.

**E. Unpaid Minimum Wages**

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate. *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652. The Complaint alleges that defendants employed approximately 16 or more employees within the relevant time period. Compl. ¶ 39. The applicable minimum wage under the NYLL for a New York City employer was $15.00 per hour from November 1, 2023, through December 31, 2023, and thereafter rose to $16.00 per hour. *See* N.Y. Lab. Law § 652(1)(a). Given that the minimum wage under the NYLL is higher than that of the FLSA for all relevant time periods, this Court analyzes plaintiff's minimum wage entitlement under the NYLL. *See* 29 C.F.R. § 778.5.

To determine whether plaintiff was paid the applicable minimum wage, the Court must first determine the plaintiff's regular hourly wage rate. *See Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *11 (E.D.N.Y. Mar. 21, 2023); *Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019). Under the FLSA, the

regular rate is defined "as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract." 29 C.F.R. § 778.108. Because plaintiff was presumably compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." *Id*. § 778.113(a).

Under the FLSA and NYLL, "there is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (citation modified); *see Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021); *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." (citation modified)).

Plaintiff worked for defendants from in or around November 2023 through January 2024. Plaintiff alleges that defendants paid her once after the third week of her employment in the amount of $500. Compl. ¶ 26; Pl.'s Aff. ¶ 11. Calculating plaintiff's regular rate based on a 40-hour work week and for the three weeks and one day she worked[3] (hereafter referred to as the "first three-week period") prior to payment, plaintiff's weekly pay during her time of employment was **$159.24** ($500 / 3.14 weeks = $159.24 per week). Plaintiff's regular rate of

[3] As set forth in plaintiff's "Statement of Damages, Interests, Attorneys' Fees & Requested Costs" spreadsheet ("Damages Calculation"), Dkt. 31-12, the $500 she received reflects payment for the period 11/1/2023 to 11/22/2023—a period of 22 days or 3.14 weeks (22 days / 7 = 3.14). Dkt. 31-12 at ECF page 2.

pay, therefore, during her employment was **$3.98 per hour** ($159.24 / 40 hours).[4] The minimum wage was $15.00 per hour during the first three-week period of plaintiff's employment, until she received the $500 payment in November 2023. N.Y. Lab. Law § 652(1)(a).

Since plaintiff's regular rate was lower than the applicable minimum wage, this Court recommends granting plaintiff's claim for unpaid minimum wages for the first three-week period of her employment for which she had received a one-time payment of $500.

**F. Unpaid Overtime Wages**

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2). Here, plaintiff alleges that she regularly worked between 44.5 to 55 hours per week, but was not paid the requisite premium for those overtime hours. Pl.'s Aff. ¶¶ 10-12; Compl. ¶ 29. Thus, plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA and the NYLL.

**G. Wage Theft Prevention Act**

The NYLL's WTPA requires that employers provide employees, at the time of hiring, with a wage notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage . . .; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law

[4] Plaintiff calculates her regular rate as follows: first, plaintiff calculates her weekly pay during her first three weeks of employment as $166.67 per week ($500 / 3 weeks = $166.67), Pl.'s Mem. at ECF page 15; and second, plaintiff calculates her regular rate of pay during her employment as $4.17 per hour ($166.67 / 40 hours = $4.17). *See id.*

§ 195(1)(a).

In addition, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . [the] rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages." N.Y. Lab. Law § 195(3). Further, "[t]he Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *report and recommendation adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024) ("*Guthrie II*"). A "concrete" injury is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). A plaintiff may establish standing to bring a WTPA claim by demonstrating "some causal connection between the lack of accurate notices and [a] downstream harm." *Guthrie II*, 113 F.4th at 308.

Here, plaintiff sufficiently alleges that defendants failed to provide plaintiff with the wage notice required by the WTPA, section 195(1)(a) of the NYLL. *See* Compl. ¶ 33. The Complaint sufficiently alleges that defendants failed to provide plaintiff with proper wage statements in violation of section 195(3) of the NYLL. *See id*. ¶34. In addition, plaintiff alleges that defendants' failure to provide her with wage notices and wage statements resulted in

"concrete harm" resulting from "lack of knowledge about the rates of pay she was receiving and/or should have receiv[ed] for her regular hours and overtime hours, terms, and conditions of her pay, and furthermore, an inability to identify her hourly rate of pay to ascertain whether she was being properly paid in compliance with the FLSA and NYLL." *See id.* ¶ 35. Plaintiff, therefore, has adequately stated claims for violations of the WTPA. *See Espinoza*, 2022 WL 987429, at *15.

## III. Relief

A party's default "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Accordingly, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). Plaintiff must establish that she is entitled to the damages sought for violations of the FLSA and NYLL.

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him." *Fan v. Jenny & Richard's Inc.*, No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (citation modified), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a

sufficient basis for the determination of damages in this context." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (citation modified), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015). "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Fan*, 2019 WL 1549033, at *9.

Here, plaintiff has submitted her own affidavit describing the length of her employment, along with average hours worked and wages paid. *See* Pl.'s Aff. ¶¶ 9-11, 18. Based on those representations, plaintiff's counsel calculated the damages due to plaintiff. *See* Damages Calculation, Dkt. 31-12; Pl.'s Mem. at 14-17. In light of defendants' default, the evidence submitted by plaintiff stands uncontroverted, and, therefore, plaintiff has provided a sufficient basis upon which to determine damages.

**A. Unpaid Wages**

Plaintiff alleges that after her third week of employment until the end of her employment in January 2024, defendants failed to pay plaintiff any wages in violation of the FLSA and NYLL. *See* Compl. ¶ 27; Pl.'s Aff. ¶¶ 14, 19. Plaintiff claims she should recover compensation for all unpaid wages at the applicable minimum wage rate. *See* Pl. Mem. at 16–17. Plaintiff bears the burden of demonstrating that she was not paid the owed wages by presenting evidence to establish the extent of her damages. *See Ventura v. Putnam Gardens Parking Corp.*, No. 20-CV-119, 2023 WL 3603589, at *8 (S.D.N.Y. Mar. 20, 2023), *report and recommendation adopted*, 2023 WL 3601649 (S.D.N.Y. May 23, 2023).

Plaintiff was not paid for work performed following her one-time payment of $500 after her third week of her employment. *See* Compl. ¶ 27, Pl.'s Aff. ¶ 19. Plaintiff, therefore, was

uncompensated starting in week four (*i.e.*, November 23, 2023[5]) through the end of her employment (*i.e.,* January 31, 2024), totaling 10 weeks of unpaid labor (70 days[6]/7 = 10). *See* Pl.'s Aff. ¶¶ 8, 11, 13; Dkt. 31-12. Accordingly, based upon the hours worked and applicable wage rates, plaintiff is owed the following amounts in unpaid wages:

**Unpaid Wages**

| **Period** | **Weeks** | **Minimum Wage Rate** | **Hours per Week** | **Total** |
|---|---|---|---|---|
| 11/23/2023–12/31/2023 | 5.57[7] | $15.00 | 40 | $3,342.00 |
| 1/1/2024–1/31/2024 | 4.43[8] | $16.00 | 40 | $2,835.20 |
| Total | | | | $6,177.20 |

In sum, this Court recommends awarding damages to plaintiff for unpaid wages in the amount of **$6,177.20** ($3,342.00 + $2,835.20 = $6,177.20) for the period November 23, 2023 through January 31, 2024.

### B. Unpaid Minimum Wages for the First Three-Week Period

During the first three-week period of her employment, for which plaintiff received compensation, plaintiff was paid below the minimum wage. Specifically, for her work from November 1, 2023 through November 22, 2023, plaintiff was paid $500. As set forth above in

[5] Plaintiff uses Nov. 23, 2023 as the first day of the period during which defendants failed to pay her any wages. Dkt. 31-12 at ECF page 2.

[6] There are 70 days between Nov. 23, 2023 and Jan. 31, 2024.

[7] Plaintiff calculates the time period of "2023 unpaid wages" as 3.62 weeks. *See* Pl's Mem. at 17. Given that this same period of time (11/23/2023-12/31/2023) actually covers 5.57 weeks (39 days / 7 = 5.57), this Court calculates the time period of her unpaid 2023 unpaid wages as 5.57 weeks.

[8] Plaintiff calculates the time period of "2024 unpaid wages" as 4.29 weeks. *See* Pl.'s Mem. at 17. Given that this period of time (1/1/2024-1/31/2024) is four weeks and three days, the number of weeks in this period is 4.43 (31 days / 7 = 4.43). Thus, this Court calculates the time period of 2024 unpaid wages as 4.43 weeks.

Section II.E, plaintiff's regular rate was **$3.98 per hour** ($500 / 3.14 weeks = $159.24 per week; $159.24 per week / 40 hours = $3.98 per hour), which is less than the applicable $15.00 per hour minimum wage in 2023. Therefore, plaintiff should have been compensated an additional $11.02 per hour—the difference between the applicable minimum wage rate of $15.00 per hour and her regular rate of pay ($15.00 - $3.98 = $11.02).[9]

Accordingly, this Court recommends awarding damages to plaintiff for unpaid minimum wages for her work from November 1, 2023 through November 22, 2023 (40 hours x 3.14 weeks = 125.6 hours) as follows, for a total of **$1,384.11** ($11.02 x 125.6 hours = $1,384.11) in unpaid minimum wages.

Plaintiff also seeks an unpaid minimum wage award for the time she worked and was not paid (*i.e.,* from November 23, 2023 through January 31, 2024). *See* Pl.'s Mem. page 16. A plaintiff, however, may not recover an unpaid minimum wage award when she also receives an unpaid wage award for the same period of time. *See, e.g., Choi v. AHC Med. Servs., PLLC*, No. 22-CV-1450, 2023 WL 5612394, at *9 (E.D.N.Y. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023); *Gonzales v. Gan Israel Pre-School*, No. 12-CV-6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014). Plaintiff may not recover twice for her unpaid wages after the first three-week period of her employment. The Court already recommends awarding her $6,177.20 in unpaid wages for the period of time November 23, 2023 through January 31, 2024 (*see* section III.A, above), and, therefore, plaintiff is not entitled to an additional award for failure to pay the minimum wage covering this same period of time.

---

[9] Plaintiff calculates the difference as $10.83 based on a regular rate of pay of $4.17. Dkt. 31-12 at ECF page 2. The Court's approach is more favorable to the plaintiff.

### C. Unpaid Overtime Compensation

Under the FLSA and the NYLL, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata*, 723 F.3d at 200 (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (quoting *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by*, 2015 WL 4557147 (S.D.N.Y. July 27, 2015)).

Plaintiff sufficiently demonstrates that defendants failed to pay her at time-and-a-half throughout her employment, despite the fluctuation in her hours and pay over the course of her employment with defendants. *See* Pl.'s Aff. ¶¶ 9–12. Since plaintiff was paid at a rate lower than the minimum wage, this Court applies an overtime rate of 1.5 times the applicable minimum wage, as discussed below. *See* 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid . . . a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1-1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."); *see also Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 253 (E.D.N.Y. 2024) ("To calculate Plaintiff's overtime compensation, the number of hours [a] Plaintiff worked over forty per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage."). Plaintiff has established that during her employment from November 2023 through

January 2024, she worked between 44.5 to 55 hours per week (or an average of 49.75 hours per week). Pl's Aff. ¶ 10. Thus, plaintiff should have received overtime pay for an average of 9.75 hours per week (49.75 hours – 40 hours = 9.75 hours). For the period between November 1, 2023, and December 31, 2023, in which the minimum wage was $15.00 per hours, plaintiff should have been compensated for 9.75 hours per week at an overtime rate of $22.50 ($15.00 x 1.5 = $22.50). For the period between January 1, 2024, and January 31, 2024, in which the minimum wage was $16.00 per hour, plaintiff should have been compensated for 9.75 hours per week at an overtime rate of $24.00 ($16.00 x 1.5 = $24.00).

Accordingly, plaintiff is owed the following amounts in unpaid overtime compensation for the respective time periods as follows:

**Unpaid Overtime Wages**

| **Period** | **Weeks** | **Minimum Wage Rate** | **Overtime Wage Rate** | **Average Unpaid Overtime Hours per Week** | **Total** |
|---|---|---|---|---|---|
| 11/1/2023–12/31/2023 | 8.71[10] | $15.00 | $22.50 | 9.75 | $1,910.76 |
| 1/1/2024–1/31/2024 | 4.43[11] | $16.00 | $24.00 | 9.75 | $1,036.62 |
| Total | | | | | $2,947.38 |

In sum, this Court recommends awarding damages to plaintiff for unpaid overtime wages for a total of **$2,947.38** ($1,910.76 + $1,036.62 = $2,947.38) in unpaid overtime wages.

[10] For the period November 1, 2023, and December 31, 2023 (with the end date included in the calculation), the Court calculates that there were 61 days or 8.71 weeks instead of 8.43 weeks used by plaintiff (3.00 + 5.43 = 8.43). *See* Dkt. 31-12 at ECF page 2.

[11] For the period January 1, 2024, and January 31, 2024 (with the end date included in the calculation), the Court calculates that there were 31 days or 4.43 weeks instead of the 4.29 weeks used by plaintiff. *See* Dkt. 31-12 at ECF page 2.

**D. Liquidated Damages**

**1. Unpaid Wages**

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages. *See Barfield*, 537 F.3d at 150. Courts, however, may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260. Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total [amount] of such underpayments found to be due" unless the employer proves that they have a "good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that the law providing the greatest recovery will govern, plaintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (citation modified). However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Id.* (citing N.Y. Lab. Law § 198(1-a), (1-d)).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Fan*, 2019 WL 1549033, at *13. As this Court has calculated plaintiff's damages according to

the NYLL, plaintiff is entitled to 100 percent of her unpaid wages as liquidated damages. *See Lopez v. J&L Sky Contractors Corp.*, No. 24-CV-7661, 2025 WL 1859690, at *24 (E.D.N.Y. July 7, 2025); *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231, 2024 WL 4751732, at *11 (S.D.N.Y. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024). Accordingly, this Court recommends awarding plaintiff **$10,508.69** ($6,177.20 (unpaid wages) + $1,384.11 (unpaid minimum wages) + $2,947.38 (unpaid overtime) = $10,508.69) in liquidated damages.

**2. Liquidated Damages for Late Payments under NYLL § 191**

Plaintiff seeks liquidated damages for defendants' untimely payment of wages. *See* Pl.'s Mem. at 20-21; Compl. ¶ 81. NYLL § 191 provides that a manual worker must be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned. N.Y. Labor Law § 191(1)(a)(i). Courts in this Circuit have held that "temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing to assert a claim for the late payment of wages," *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 345 (S.D.N.Y. Feb. 12, 2024), because "workers paid on an untimely basis necessarily incur a concrete harm due to the time value of money. . . ." *See, e.g.*, *Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 415 (S.D.N.Y. 2023); *see also Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 64 (S.D.N.Y. 2023) ("The loss of the time value of money owed to plaintiff is not a harm that might occur, but one that has occurred."); *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 53 (S.D.N.Y. 2023) (collecting cases). NYLL allows plaintiffs to recover for violations of section 191 where plaintiffs were not paid at all as well as

when they receive late payments.[12] *See Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 350 (S.D.N.Y. 2024).

Plaintiff alleges that she was entitled to weekly payments under NYLL § 191, which requires "manual" workers to be paid weekly. Pl.'s Mem. at 20. Under NYLL § 190(4), "manual worker" means "a mechanic, workingman or laborer." "[T]he New York Department of Labor has long interpreted the term to include 'employees who spend more than 25 percent of their working time performing physical labor.'" *Cooke v. Frank Brunckhorst Co., LLC*, 734 F. Supp. 3d 206, 215 (E.D.N.Y. 2024) (quoting N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009)). By this criterion, carpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be "manual workers." *Beh v. Comm. Care Companions Inc.*, No. 19-CV-1417, 2021 WL 3914297, at *3 (E.D.N.Y Feb. 1, 2021).

Here, plaintiff alleges in the Complaint that her primary duties were as a "machine operator, flagger, laborer, and helper." Compl. ¶ 21. The Court finds plaintiff to have adequately alleged that she was employed as a manual worker and is entitled to liquidated damages under NYLL § 191.

---

[12] On May 9, 2025, the New York legislature issued an amendment to the NYLL limiting liquidated damages for violations of NYLL § 191(1)(a). *See* NYLL § 198 (1-a) ("[L]iquidated damages shall not be applicable to violations . . . where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly" provided the employer has not previously been found liable for similar violations following the enactment of the Amendment); *DeDyn v. Gintzler Graphics, Inc.*, No. 23-CV-1291, 2026 WL 221434, at *7 (W.D.N.Y. Jan. 28, 2026) (quoting NYLL § 198(1-a)). The amendment took effect on May 9, 2025, and applies to causes of action pending or commenced by the effective date. *See id.* (explaining that the amendment "'shall take effect immediately and shall apply to causes of action pending or commenced on or after such date'" (quoting Act of May 9, 2025, Ch. 56, 2025 N.Y. Laws S. 3006-C)). Here, where plaintiff only received one payment after her first three weeks of work and, therefore, did not receive semi-monthly payments, plaintiff is still able to recover liquidated damages for violations of NYLL § 191(1)(a).

Plaintiff was paid once after her third week of work, meaning she timely received payment for only one week of her time working at Mapesa. Under NYLL § 198(1-a), "[a]n employee who is 'paid less than the wage to which . . . she is entitled' under the provisions of article 6 may bring a 'wage claim' . . . 'to recover the full amount of any underpayment' as well as 'reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law,' an additional payment of 'liquidated damages equal to one hundred percent of the total amount of the wages found to be due.'" *Zachary*, 2024 WL 554174, at *5 (quoting N.Y. Lab. Law § 198(1-a)).

In the absence of defendants' appearance in this case, the Court finds that plaintiff is able to recover the "full amount of any underpayment" for defendants' violation of NYLL § 191. Plaintiff calculates liquidated damages for late payments "by multiplying her number of late payments in weeks to her converted hourly rate and prevailing minimum wage by the total work hours per week." Pl.'s Mem. at 20–21. Although this Court agrees that plaintiff is entitled to recover liquidated damages for late payments, plaintiff's use of prevailing minimum wages to calculate this category of damages results in an award that is duplicative of the liquidated damages already recommended for defendants' failure to pay unpaid wages. *See Bemejo v. Shaker Contractors, Corp.*, No. 22-CV-1427, 2022 WL 17251667, at *5-6 (S.D.N.Y. Nov. 28, 2022). Rather, this Court calculates liquidated damages for late payments at plaintiff's regular rate of pay for only those hours in which wages were untimely. *See id.; Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718, 2024 WL 806137, at *9-10 (S.D.N.Y. Feb. 27, 2024); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010).

This Court calculates plaintiff's liquidated damages for late payments under NYLL § 191 for the first three-week period of her employment, excluding the timely one-time payment she received after her third week. This consists of $**423.73** for the first two weeks and one day[13] of plaintiff's employment ($3.98 x 2.14 weeks x 49.75 hours = $423.73). *See Bemejo*, 2022 WL 17251667, at *5; *Urion Constr.,* 674 F. Supp. 3d 42 at 53–54.

In total, the Court recommends liquidated damages of **$10,932.42 (**$10,508.69 + $423.73 = $10,932.42).

### E. Statutory Damages Under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (quoting *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-7729, 2016 WL 4487788, at *14 (S.D.N.Y. Aug. 25, 2016)).

After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d). Here, plaintiff alleges she never received a wage notice or wage statement from defendants at any point during the course of her employment. *See* Compl. ¶¶ 32-34. Plaintiff alleges that plaintiff worked without a wage notice and wage statement for more than 100 days and, therefore, is entitled to the

---

[13] The Court calculates the first two weeks plus one day as 15 days or 2.14 weeks.

maximum statutory damages under both section 195(1) and section 195(3). *See* Pl.'s Mem. at 21.[14] Section 195(1), however, states that individuals may recover "damages of fifty dollars for each work day" as opposed to total days elapsed since the start of employment. *See* N.Y. Lab. Law § 198(1-b). As alleged, plaintiff consistently worked between four and five days per week, with an average of 4.5 days per week. *See* Pl.'s Aff. ¶ 8; Compl. ¶ 22. Calculating total workdays during plaintiff's employment period by the average of 4.5 workdays per week, workdays total **59.13** (4.5 x 13.14 weeks = 59.13 workdays).

Thus, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(3), and $2,956.50 ($50 x 59.13 workdays = $2,956.50) for violations of N.Y. Lab. Law § 195(1), for a total of **$7,956.50** ($5,000 + $2,956.50 = $7,956.50).

### F. Prejudgment Interest

Plaintiff seeks an award of prejudgment interest pursuant to New York law. *See* Pl.'s Mem. at 21–22. "[Alt]hough the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *12 (E.D.N.Y. July 9, 2024) (citing *Fermin*, 93 F. Supp. 3d at 48–49). Prejudgment interest is available for unpaid wages under the NYLL, but not on liquidated damages or amounts awarded under the WTPA. *See Fermin*, 93 F. Supp. 3d at 49. Prejudgment interest on NYLL damages is calculated at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004(a); *Espinoza*, 2022 WL 987429, at *19. In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R.

---

[14] The Court calculates the number of days from November 1, 2023, through January 31, 2024, including start and end dates, as 92 days or 13.14 weeks.

§ 5001(b). Courts have discretion in determining a reasonable date from which to award prejudgment interest. *See Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021).

Here, plaintiff incurred damages at various times throughout her employment. Thus, this Court finds that the midway point between when plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) ("When unpaid wages were incurred at various times, simple prejudgment interest is calculated from a singular, midpoint date through the date judgment is entered." (citation modified)); *see also Hinson v. Tammys Nail Utopia LLC*, No. 23-CV-2395, 2024 WL 3611409, at *20 (E.D.N.Y. July 31, 2024) (using the midpoint of plaintiff's employment to calculate prejudgment interest), *report and recommendation adopted*, Order dated Oct. 2, 2024. The midpoint between November 1, 2023, and January 31, 2024—the end of plaintiff's employment—is December 16, 2023.

Thus, this Court recommends awarding plaintiff prejudgment interest at a daily rate of **$2.59** ((0.09 x $**10,508.69**) / 365 = $2.59) from December 16, 2023, through the date judgment is entered.

### G. Post-judgment Interest

Plaintiff seeks an award of post-judgment interest. *See* Pl. Mem. at 22–23. "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 617 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right). The post-judgment interest rate is set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated

from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment." 28 U.S.C. § 1961(b).

This Court finds that an award of post-judgment interest is mandatory, and respectfully recommends awarding post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961(a) and (b) from the date of the entry of judgment to the date of payment.

**H. Penalty Increase if Damages Unpaid within Ninety Days**

Plaintiff seeks a fifteen percent increase for any unpaid amount of the judgment still pending after ninety days, pursuant to NYLL § 198(4). Pl.'s Mem. at 23. The NYLL provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4); *see Candelario-Salazar v. Kings II Deli & Grocery, Inc.*, No. 20-CV-760, 2020 WL 8413558, at *8 (E.D.N.Y. Dec. 28, 2020), *report and recommendation adopted*, 2021 WL 129062 (E.D.N.Y. Jan. 14, 2021). Accordingly, plaintiff's damages awarded under the NYLL should be increased by fifteen percent should defendants fail to timely satisfy the judgment. *See Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (collecting cases and recommending automatic increase of judgment for failure to pay, in addition to award of post-judgment interest), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); *Candelario-Salazar*, 2020 WL 8413558, at *8.

**I. Attorney's Fees and Costs**

Lastly, plaintiff seeks $9,550 in attorney's fees and $1,183 in requested costs. *See* Pls.' Mem. at 23; Dkt. 31-12 at ECF page 4. Plaintiff is entitled to recover reasonable attorney's fees and costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198, 663(1). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin*, 93 F. Supp. 3d at 51; *see N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

A fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010). District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

The NYLL permits a plaintiff to recover reasonable attorney's fees similar to recovery for attorney's fees and costs under the FLSA. To determine whether attorney's fees are reasonable, courts consider both the hourly rate and number of hours worked. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts determine whether an attorney's hourly rate is reasonable by considering what a reasonable paying client would be willing to pay and by looking at the attorney's experience. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Shariff v. Alsaydi*, No. 11-CV-6377, 2013 WL 4432218, at *5 (E.D.N.Y. Aug. 15, 2013). In particular, when assessing an attorney's

requested hourly rate, courts typically consider other rates awarded in the district where the reviewing court sits. *See Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009).

Here, plaintiff's counsel has submitted a table labeled "Billing Records for Masqui v. Iron Steel Mapesa Corp. et al. – 1:24-cv-5365-RER-JRC." Dkt. 31-12 at ECF page 4. The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010). "Descriptions of work recollected in tranquility days or weeks later will not do." *Id.* "The contemporaneous time records requirement is strictly enforced[.]" *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *7 (E.D.N.Y. Aug. 31, 2016). While it is not clear that the records plaintiff's counsel provides were made at the time the work was performed, the records are sufficiently detailed to support the inference that plaintiff's counsel's billing was based on contemporaneous entries. *See Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) ("So long as an attorney 'made contemporaneous entries as the work was completed, and that [her] billing was based on these contemporaneous records,' *Carey* is satisfied." (quoting *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir.1994)); *see also David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y.1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit

recovery of attorneys' fees."); *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y.1986) (typewritten transcription of original records satisfy *Carey* ).

**1. Reasonable Rates**

The Court assesses first if the attorneys' requested rates are reasonable and consistent with the prevailing rates in the Eastern District of New York. *Finkel*, 970 F. Supp. 2d at 127–28 (citing *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "Courts in this District have held reasonable hourly rates in FLSA cases to be approximately $300-450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$80 for legal support staff." *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586, 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022) (quoting *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923, 2020 WL 6370058, at *10 (E.D.N.Y. July 24, 2020), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020)); *accord De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003, 2021 WL 2227977, at *11 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021).

Plaintiff has submitted billing records and additional information regarding attorney qualifications in support of her fee application. *See* Dkt. 31-12 at ECF pages 4–5. Based on plaintiff's submitted billing records, two attorneys worked on this case with additional support of paralegal services. *See id.* Roman Avshalumov, senior managing attorney at Helen F. Dalton & Associates, P.C., billed approximately 19.2 hours at a rate of $425 per hour. *Id*. James O'Donnell, head of the labor law practice group and managing attorney at the same firm, billed approximately 2.7 hours at a rate of $250 per hour. *Id.* Additionally, billing records show that 9.6 hours of paralegal services were billed at a rate of $75 per hour. *Id.*

Mr. Avshalumov has been an attorney for more than 15 years, "oversees all litigation at

the firm," and has worked on more than one hundred labor/employment cases. Dkt. 31-12 at ECF page 5. Mr. O'Donnell oversees all labor and employment matters at the firm and has exclusively worked on those matters while employed there. *See id.* "This Court finds the fee of $425 per hour for Mr. Avshalumov and $250 per hour for Mr. O'Donnell to be reasonable. *See Jimenez v. Green Olive Inc.,* 744 F. Supp. 3d 221, 257–58 (E.D.N.Y. 2024) (awarding Mr. Avshalumov the requested hourly rate of $425 per hour); *Pinto v. Midway Grocery, Corp.,* No. 21-CV-00778, 2022 WL 20537490, at *6 (E.D.N.Y. Oct. 14, 2022) (finding the hourly rate of $250 for Mr. O'Donnell to be reasonable).

This Court also finds the requested reimbursement for paralegal services at an hourly rate of $75 to be reasonable. *See, e.g., Thompson*, 2020 WL 5822455, at *12 (collecting cases awarding paralegals an hourly rate of $75-90 per hour); *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals" in fee-shifting cases).

**2. Reasonable Hours**

Having determined the applicable billing rates in this case, this Court now turns to the reasonableness of the number of hours billed. In reviewing a fee application, the Court should exclude "excessive, redundant, or otherwise unnecessary" hours. *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The Court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the Court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Plaintiff's counsel submitted itemized billing records showing that Mr. Avshalumov spent 19.2 hours on this case, Mr. O'Donnell spent 2.7 hours on this case, and that paralegal services were billed for 9.6 hours, for a total of 31.5 hours on the case. *See* Dkt. 31-12 at ECF page 4–5. This time spent included, but was not limited to, intake of the plaintiff, drafting of the complaint, drafting of the request for certificate of default and motion for default judgment, and calculation of damages and interest. *See id.* This Court finds the hours expended are reasonable under the circumstances. *See Nam*, 2021 WL 878743, at *11 (on default judgment, finding that expending 27.3 hours over fifteen months was reasonable); *Villarrubia v. La Hoguera Paisa Rest. & Bakery Corp.*, No. 18-CV-4929, 2020 WL 6430327, at *2 (E.D.N.Y. Oct. 9, 2020) (finding that expending 35.45 hours litigating over thirteen months was reasonable), *report and recommendation adopted*, 2020 WL 6415171 (E.D.N.Y. Nov. 2, 2020).

In sum, this Court respectfully recommends awarding plaintiff attorneys' fees for the 19.2 hours worked by Mr. Avshalumov at the rate of $425 per hour, the 2.7 hours worked by Mr. O'Donnell at the rate of $250 per hour, and the 9.6 hours of paralegal services at the rate of $75 per hour. This Court recommends awarding plaintiff total attorneys' fees in the amount of **$9,550** (($425 x 19.2) + ($250 x 2.7) + ($75 x 9.6) = $9,550).

**3. Costs**

Finally, plaintiff seeks $1,183 in costs, comprised of the filing fee ($405), the cost of attempted service and service of process upon defendants ($629), and the cost of non-military affidavits ($149). *See* Dkt. 31-12 at ECF page 4. Plaintiff submitted invoices for these itemized expenses. *See id* at 7-9. "Generally, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants as long as those costs are tied to determinable, out of pocket disbursements." *Aponte*, 2022 WL 17718551, at *10 (internal

citation omitted). Since the costs incurred by initiating an action are routinely recoverable, this Court recommends awarding plaintiff costs in the amount of **$1,183**.

**Conclusion**

For the reasons set forth above, this Court respectfully recommends:

(1) granting, in part, plaintiff's motion for a default judgment against defendants Iron Steel Mapesa Corporation, Oscar Agualongo, and Mauro Agualongo, and entering judgment against the defaulting defendants;

(2) awarding plaintiff damages totaling **$29,397.61** consisting of **$6,177.20** in unpaid wage compensation, **$1,384.11** in minimum wage compensation, **$2,947.38** in overtime compensation, **$10,932.42** in liquidated damages, and **$7,956.50** in statutory damages;

(3) awarding plaintiff pre- and post-judgment interest, as described above; and

(4) awarding plaintiff **$9,550** in attorneys' fees and **$1,183** in costs.

A copy of this Report and Recommendation is being electronically served on Counsel. This Court directs plaintiff's counsel to serve a copy of this Report and Recommendation on defendants by overnight mail and first-class mail and to file proof of service on ECF by **September 10, 2026**.

Any objections to the recommendations made in this Report must be filed with the Honorable Ramon E. Reyes within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 22, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's

order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
September 8, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge